IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **TOSHIA CREWS** | |
| **Plaintiff,** | **Civil Action File No.:** |
| v. | **Jury Trial Demanded** |
| **ATLANTA HEART SPECIALISTS, LLC** | |
| **Defendant.** | |

## COMPLAINT

Plaintiff, Toshia Crews, ("Plaintiff" or "Crews") brings this lawsuit against Defendant, Atlanta Heart Specialists, LLC ("Defendant" or "Atlanta Heart Specialists") seeking relief and damages available under law, based on the following factual allegations and causes of action:

## NATURE OF THE ACTION

1. This case involves Defendant's failure to comply with laws Congress passed in 2020 to protect workers during the COVID-19 global pandemic: the Families First Coronavirus Response Act ("FFCRA") and its components, the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and

1

Medical Leave Expansion Act ("EFMLEA"). Pub. L. No. 116-127 (2020). Defendant violated the FFCRA by refusing to extend leave that Plaintiff was entitled to receive in order to care for her child, whose school closed due to the pandemic. Defendant also violated the FFCRA by terminating Ms. Crews in retaliation for exercising her rights under the COVID leave laws. Lastly, Defendant violated the FFCRA by interfering with the exercise of Plaintiff's federally protected right to take COVID-related leave.

## THE PARTIES

2.      Plaintiff is a citizen of the state of Georgia. During the time of the events alleged in this Complaint, Crews worked as a billing specialist for Atlanta Heart Specialists.

3.      Defendant is a multi-clinic cardiac care provider in the Atlanta metropolitan area whose principal office address is located at 1468 Montreal Road, Tucker GA, 30084.

4.      Atlanta Heart Specialists has less than 500 employees and it engages in commerce; as such, it is subject to the FFCRA.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction concerning this civil action pursuant to 28 U.S.C.A. §§ 1331 and 1343.

6. Venue is proper in this district and division under 28 U.S.C.A. § 1391, as Defendant conducts business in and the alleged unlawful acts occurred in this district and division.

## FACTUAL ALLEGATIONS

7. In December 2019, Plaintiff Crews was hired as a $17.00/hr. billing specialist for Atlanta Heart Specialists' central office in December 2019.

8. Crews is a single mother whose daughter at the time of the events alleged herein was seven, and who was being educated in a Georgia public school.

9. On March 18, 2020, due to the surging coronavirus outbreak, in-person instruction ended at Georgia schools, which remained closed for the remainder of the 2019-2020 academic year.

10. Despite the pandemic, Atlanta Heart Specialists declined to close and deemed its personnel essential workers, including its billing staff.

11. Like numerous parents in Georgia and around the country who were deemed essential workers, Crews faced an immediate childcare crisis, which required her to depend on help from relatives. In Crews' case, the assistance proved to be short-lived and would last for no longer than the early part of May, 2020.

12. Congress acted with unusual speed to pass legislation to protect workers who were having to choose between their health and their families' well-being and their need to earn a living. On March 18, 2020, Congress passed, and the President of the United States immediately signed a comprehensive law, the FFCRA, to provide employees rights to both paid and unpaid leave during the pandemic. The law became effective April 1, 2020.

13. The FFCRA was relatively complex and was comprised of two other new laws, the EPSLA and the EFMLEA. Under the EPSLA, employees were entitled to two weeks of paid sick leave, up to 80 hours, for missing work related to COVID, including personal illness as well as the need to care for children whose schools shut down in-person learning due to the virus.

14. The EFMLEA provided a more extensive leave period of up to 12 weeks for employees who requested time off to care for children whose schools closed under COVID lockdowns, with the caveat that ten weeks of this leave period had to be paid at a rate of two-thirds of the employee's annual pay.

15. The FFCRA also created two separate enforcement mechanisms for workers whose protected leave rights under the FFCRA were violated by their employers. First, the EPLSA prohibits employees "from discharging, disciplining, or discriminating against any employee" who exercised her rights to take leave under the statute. 29 C.F.R. §826.150(a).

16. Claims of unlawful retaliation for taking leave under the EPSLA are governed by the anti-retaliation provisions of the Fair Labor Standards ("FLSA"). 29 U.S.C.A. Section 215(a)(3). *See* FFCRA, Pub. L. No. 116-127, §1505 (2020).

17. The EFMLEA's enforcement provisions are contained in the anti-interference provisions of the Family Medical Leave Act. 29 U.S.C.A. §2615. *See* 29 C.F.R. §826.51(a).

18. Knowing that her short-term childcare remedy was coming to an end, in early May 2020, Crews informed her supervisors at Atlanta Heart Specialists of

her issues with childcare and sought guidance as to her options. Crews made it clear that her preference was to telework rather than to take time off and specifically asked for a telework accommodation. Crews also asserted that her reasons for seeking telework were based on childcare.

19. On May 5, 2020, the Practice Administrator at Atlanta Heart Specialists, Chimere Smith, emailed Crews that the company would not accommodate her telework request. Smith told Crews that as an alternative, she could take a "leave of absence."

20. Crews had been specifically directed to submit her telework request to Smith and depended on Smith's guidance as to her leave related rights. Smith did not inform Crews of the scope of her rights under the FFCRA or the notice process that the new law required. In fact, when Crews followed up seeking more guidance as to what she needed to do to obtain a "leave of absence", Smith told her that no paperwork was required and that she did not need to take additional steps.

21. By March 25, 2020, the Department of Labor had promulgated a model notice for employers to display at the workplace regarding the newly established FFCRA rights and had issued guidance that the notice should also be

sent by email or direct mail. Upon information and belief, Atlanta Heart Specialists took none of these steps.

22. Crews never received guidance from Smith, or any other personnel at Atlanta Heart Specialists regarding the duration of her "leave of absence"; whether she would be paid, and how much she would be paid.

23. After beginning her "leave of absence" on or about May 7, 2020, Crews was issued her next biweekly paycheck, which covered the period May 2 to May 15, 2020. Instead of receiving a check reflecting the paid sick leave to which she was lawfully entitled beginning on or about May 7, Crews received a check that reflected only her unused personal time off since her hiring, a net pay of $304.82.

24. In early June 2020, Crews received COBRA notice that she was about to be terminated and would need to apply for continued health benefits. Crews immediately sought clarification as to why she was being terminated despite being on what she was told by management was a company approved leave of absence.

25. The response Crews received was contradictory and factually incorrect. Crews' billing manager, Kendra Snorton, mischaracterized Crews' May

inquiries about telework as a declaration that Crews would not be returning to work due to her childcare issues. In fact, Crews had simply asked for guidance as to her options. Snorton also inquired of Crews if she intended to resign or return to work, when the COBRA notice had already established that Crews was in the process of being officially terminated.

26. Crews sought on numerous occasions during the next several months to receive an explanation as to why she had been fired when a company official directly sanctioned a "leave of absence." Crews was only told by company representatives that she was deemed to have resigned, a claim that is factually false and unsupported by any evidence.

27. The FFCRA expired on December 31, 2020, but under guidance from the Department of Labor, employees may still sue under the two year statute of limitations for violations occurring between April 1 and December 31, 2020.

## COUNT I
### (FFCRA/EPLSA)

28. Plaintiff incorporates by reference all preceding paragraphs of this complaint.

29. Plaintiff expressly sought a telework accommodation from Defendant to enable her to care for her child, whose school ceased in-person learning activities due to the COVID-19 pandemic. Defendant declined to grant the accommodation.

30. Based on her bona fide need for leave to care for a child whose school closed because of the coronavirus, Plaintiff was lawfully entitled to paid leave for a period of two weeks, or 80 hours, based upon the provisions of the FFCRA and its component, the EPSLA.

31. Defendant willfully denied Plaintiff paid leave to which she was lawfully entitled, depriving her of wages.

32. Defendant is liable for liquidated damages.

## COUNT II
### (FFCRA/EFMLEA)

33. Plaintiff incorporates by reference all preceding paragraphs of this complaint.

34. Plaintiff expressly sought a telework accommodation from Defendant to enable her to care for her child, whose school ceased in-person learning activities due to the COVID-19 pandemic. Defendant declined to grant the accommodation.

35. Based on her bona fide need for leave to care for a child whose school closed because of the coronavirus, Plaintiff was lawfully entitled to paid and unpaid leave for a period of up to twelve weeks, with ten mandated weeks of paid leave at a rate of two-thirds of her usual pay, based upon the provisions of the FFCRA and its component, the EFMLEA.

36. Defendant willfully denied Plaintiff leave to which she was lawfully entitled, depriving her of wages and benefits.

37. Defendant is liable for liquidated damages.

## (COUNT III)
### (FFCRA/EPSLA/FLSA retaliation)

38. Plaintiff incorporates by reference all preceding paragraphs of this complaint.

39. Plaintiff engaged in protected activity under the EPSLA by seeking to obtain leave for the express purpose of caring for her child whose school was closed for reasons related to COVID-19.

40. Plaintiff was terminated by Defendant in close temporal proximity, between two weeks and one month, of her engaging in protected activity in violation of the anti-retaliation enforcement provisions of the EPLSA, contained in the Fair Labor Standards Act.

41. As a result of Defendant's retaliatory conduct, Plaintiff lost pay and benefits associated with her employment.

42. Defendant is liable for liquidated damages.

## COUNT IV
### (FFCRA/EFMLEA/FMLA/interference)

43. Plaintiff incorporates by reference all preceding paragraphs of this complaint.

44. Despite being aware that Plaintiff was lawfully entitled to twelve weeks of paid and unpaid leave because of her bona fide need to care for a child

whose school was closed for reasons related to COVID-19, Defendant never informed Plaintiff of her rights under the FFCRA/EFMLEA, including her right to request and take leave under said statutes.

45. Defendant unlawfully failed to provide Plaintiff twelve weeks of paid and unpaid leave to which she was lawfully entitled.

46. Defendant unlawfully terminated Plaintiff rather than provide her leave to which she was lawfully entitled.

47. Defendant's actions willfully interfered with the exercise of Plaintiff's rights under the EFMLEA and the related enforcement provisions of the Family Medical Leave Act.

48. As a result of Defendant's interference with her statutorily protected rights, Plaintiff lost pay and benefits associated with her employment.

49. Defendant is liable for liquidated damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay and front pay, as well as lost benefits;

B. Liquidated damages;

C. Attorney's fees and costs of litigation;

D. Pre-judgment and post-judgment interest;

E. Other relief deemed appropriate by the Court.

Submitted, this 1st day of July, 2021.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[1]
Jermaine "Jay" Walker
3355 Lenox Rd. NE
Suite 705
Atlanta GA 30326
adavis@hkm.com
404-220-9165
jwalker@hkm.com
404-301-4020

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action this same day. Davis is licensed in the state of Alabama and the District of Columbia.

14